# SOUTH ARKANSAS PETROLEUM COMPANY *v.*
## Dana SCHIESSER

00-614 36 S.W.3d 317

Supreme Court of Arkansas
Opinion delivered February 1, 2001

*Barber, McCaskill, Jones & Hale, P.A.*, for appellant.

*Ogles Law Firm, P.A.*, by: *John Ogles*, and *Law Offices of Sara M. Sawyer*, for appellee.

TOM GLAZE, Justice. This appeal is brought by South Arkansas Petroleum Co., Inc. (SAPCO), from a jury verdict which found SAPCO liable for malicious prosecution and abuse of process committed against appellee Dana Schiesser. The jury awarded Schiesser $110,000.00 in compensatory damages and $250,000.00 in punitive damages. Schiesser initiated the lawsuit against SAPCO after she successfully defended herself against felony theft charges. The charges were based upon allegations by SAPCO's executive officers, Clint and Jim Johnson, which they had reported to the Monticello police and the Drew County prosecuting attorney. On appeal, SAPCO argues Schiesser proved neither malicious prosecution nor abuse of process.

We first address SAPCO's arguments as they relate to malicious prosecution. To prevail on her claim of malicious prosecution, Schiesser was required to prove the following elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *McLaughlin v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996). Here, SAPCO does not question elements (2) and (5), but it does question whether Schiesser proved the other three.

SAPCO first submits that there is no substantial evidence that it instituted or continued the criminal charges against Schiesser; in

making this argument, it relies on comment g to the Restatement (Second) of Torts, § 653 (1977). Section 653 sets out the elements of the tort of malicious prosecution, and comment g provides in relevant part as follows:

> [A] private person who gives to a public official information of another's supposed criminal misconduct . . . obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is entirely to his discretion to initiate the proceedings or not.

■ SAPCO contends that the Monticello police obtained a warrant for Schiesser's arrest on their own initiative, and there was no evidence that the prosecuting attorney filed charges against Schiesser upon any basis other than the prosecuting attorney's own discretion. SAPCO cites *Matthews v. Blue Cross & Blue Shield of Michigan*, 572 N.W.2d 603 (Mich. 1998), because of its reliance on comment g to the Restatement. There, the Michigan court stated the settled rule that a prosecutor's exercise of his or her independent discretion in initiating and maintaining the prosecution is a complete defense to an action for malicious prosecution. Comment g to the Restatement, however, further provides that, when a private person makes an accusation of criminal misconduct about another to an official, the person must believe the accusation or information is true. "If, however, the information is known by the giver to be false, an *intelligent exercise of the officer's discretion becomes impossible*, and a prosecution based upon it is procured by the person giving the false information." Restatement (Second) of Torts § 653 cmt. g (emphasis added). Despite SAPCO's attempt to distinguish "the Restatement approach," Arkansas law is consistent with comment g and the Michigan case, as well. In *McLaughlin, supra,* this court stated the absence of probable cause is an essential element in a claim for malicious prosecution, and it is only when the defendant makes a full, fair, and truthful disclosure of all facts known to him to competent counsel (or the prosecuting attorney) and then acts bona fide upon such advice, that this will be a good defense to a claim of malicious prosecution. *See also Kellerman v. Zeno*, 64 Ark. App. 79, 983 S.W.2d 136 (1998).

SAPCO's argument that the evidence entitles it to the so-called "advice-of-counsel" defense, as related above in comment (g)

and our *McLaughlin* decision, is futile. In short, SAPCO's owner, Clint Johnson, gave law enforcement officials information alleging criminal misconduct on Schiesser's part, but was not forthcoming with all the pertinent information which he had in his possession when he first reported the alleged theft to Monticello police.

Before contacting Monticello Police Investigator John Dement, Clint Johnson checked some of the store's daily reports during a period beginning in June 1996, and ending in January 1997, and found that these reports reflected $7,809 in "overrings." Based on that, and without looking at each day's shift reports (which would have shown which employee did the overrings), Clint Johnson concluded Schiesser had stolen that amount of money. On June 26, 1997,[1] Clint and Jim Johnson confronted Schiesser about the overrings; she replied that she did not take any money, but that "she would repay it not to have her name drug [sic] through the mud." Both of the Johnsons accused Schiesser of stealing money, and told her if she did not repay the money, they would prosecute her. Schiesser subsequently decided not to pay any money because she denied having taken it.

In July 1997, Clint Johnson went to Officer Dement's office in order to file a complaint against Schiesser; he provided Dement with paperwork which he claimed supported SAPCO's allegations of theft. Although the daily reports Clint Johnson gave Dement showed Schiesser had entered "overrings" on them between June 1996 and January 1997, Schiesser was indisputably out of the country and out of state on a number of those days. Clint Johnson was apprised of these errors by reading the daily reports, but he never gave that information to Dement. Clint Johnson also conceded Schiesser could not be shown to have been in the store on other days that Clint Johnson had daily reports purportedly bearing Schiesser's signature. Thus, while Clint Johnson knew Schiesser could not have signed a number of the daily reports he gave Dement, Johnson, for whatever reason, failed to give this exculpatory information to Dement. It is also worthy to mention that, on one of the days Schiesser was accused of stealing money, the amount missing was supposedly $728.00. Such amount was clearly fictitious, because the store had never sold merchandise that totaled

---

[1] Apparently Schiesser had sustained an injury on the job, and June 1997 was when she returned to work.

more than $350.00 in one day. This error, too, was known by Clint Johnson, but not given to Officer Dement before charges were filed against Schiesser.

&#x20;&#x20;&#x20;&#x20;&#x20;When reviewing a challenge to the sufficiency of the evidence, we examine the evidence and all reasonable inferences arising therefrom in the light most favorable to Schiesser, the appellee. *See SEECO, Inc. v. Hales,* 341 Ark. 673, 22 S.W.3d 157 (2000). Here, the evidence abundantly shows SAPCO was not entitled to the "advice-of-counsel" defense it sought at trial. SAPCO clearly did not make a full and fair disclosure of all facts known to it, and in fact, what SAPCO *did* provide misled the police and the prosecuting attorney. When asked what effect these omissions may have played in bringing theft charges against Schiesser, Dement and the prosecutor each said, "I think that would have seriously affected my decision as to whether or not to bring charges." Morever, the prosecutor said, "[My] office should have been advised of [these matters] in order to fairly determine probable cause." In sum, we conclude that the record soundly and convincingly supports the view that the State filed felony charges based largely on the misleading information the Johnsons gave, as well as the information they failed to give, to the police, magistrate judge, and prosecuting attorney. Based upon such information, it is fair to conclude SAPCO procured and thereby instituted the criminal charges against Schiesser, charges of which she was later acquitted for lack of evidence.

SAPCO next argues that, irrespective of the evidence, Schiesser failed to prove the third element of malicious prosecution, namely, that there was an absence of probable cause to bring the criminal charges against her. SAPCO argues it established — as a matter of law — that probable cause existed to bring the criminal proceeding against Schiesser. Its argument is premised on the fact that, at the criminal theft trial, Schiesser made a motion for directed verdict at the end of the State's case and renewed it at the close of all the evidence, and the trial court denied both of those motions. SAPCO submits that the trial court's denial of these motions was tantamount to a finding that there was substantial evidence to support the theft charges against Schiesser. SAPCO points out that in obtaining an arrest warrant, the lesser burden of showing probable cause is required by presenting a state of facts or credible information which would induce an ordinarily cautious person to

believe that the accused is guilty of the crime. In sum, SAPCO submits the novel argument that because the State's criminal case against Schiesser survived Schiesser's directed verdict motions, those rulings constituted a binding determination of the existence of probable cause in a later malicious prosecution action. Citing the case of *Crockett and Brown v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993), SAPCO argues that collateral estoppel applies to the situation here, and because the issue of probable cause was decided by a directed verdict ruling in Schiesser's criminal case, that issue cannot be relitigated in Schiesser's subsequent malicious prosecution action against SAPCO. This argument is wholly without merit.

■ In the context of a malicious prosecution action, the existence of probable cause is to be determined by the facts and circumstances surrounding the commencement and continuation of the legal proceedings. *Cordes v. Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). Probable cause for prosecution must be based upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused person to be guilty of the crime for which she is charged. *Id.*; *see also Wal-Mart Stores, Inc. v. Binns*, 341 Ark. 157, 15 S.W.3d 320 (2000). Ordinary caution is a standard of reasonableness, which presents an issue for the jury when the proof is in dispute or subject to different interpretations. *Cordes*, 301 Ark. at 31; *Binns*, 341 Ark. at 163.

■ ■ Thus, only when the facts relied upon to establish probable cause are *undisputed* does the question of the existence of probable cause become a question of law for the courts. *See Binns*, 341 Ark. at 163 (quoting from *Keebey v. Stifft*, 145 Ark. 8, 224 S.W. 396 (1920)); *Wal-Mart Stores, Inc. v. Williams*, 71 Ark. App. 211, 29 S.W.3d 754 (2000). In the present case, the trial judge in the criminal action against Schiesser viewed only the evidence in favor of the State when ruling on Schiesser's directed-verdict motions, and merely found sufficient evidence to submit the case to a jury. As already discussed above, whether Schiesser stole SAPCO's money was clearly in dispute, thus making it a factual question for the jury. Given these circumstances, SAPCO is simply wrong in its contention that such probable cause issue was fully and finally decided and, as a matter of law, could not later be litigated in a civil

malicious prosecution action.[2]

In SAPCO's third point, it asserts that Schiesser's evidence fell short of showing SAPCO possessed malice — the fourth element of malicious prosecution — when it caused officials to initiate criminal charges against Schiesser. SAPCO largely relies on Officer Dement's testimony that relates that officer's impressions of Clint Johnson when Johnson initially accused Schiesser of stealing SAPCO's money. Dement said that Clint Johnson seemed to be truthful and did not appear to be acting out of hatred, ill will, or vindictiveness.[3]

Once again, we are left to point out that when Clint Johnson first accused Schiesser of stealing money, he withheld considerable information that tended to show she never took SAPCO's money. Johnson conceded this fact, but offered no sound reason for his failure to disclose this exculpatory information to either Dement or the prosecuting attorney. In addition, SAPCO's other owner, Jim Johnson, admitted he did not know that Schiesser stole the money, but met with her to tell her that, as manager, she was responsible for the money, and if she repaid the money, his son (Clint) would not bring criminal charges against her.[4] From this testimony, the jury could have inferred ill will on the Johnsons' part due to their failure to make a fair disclosure of the information favorable to Schiesser. The jury could also have inferred and attributed malice from the Johnsons' threat to bring criminal charges against Schiesser in order to compel her payment of any missing money, irrespective of her culpability. At this point, we hasten to add that Schiesser denied

---

[2] Although SAPCO cites cases from Georgia and Oklahoma in support of its argument, we find Arkansas case law controlling. *See Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994); *Monroe v. Sigler*, 353 S.E.2d 23 (Ga. 1987); *see also Adamson v. Dayton Hudson Corp.*, 774 P.2d 478 (Okla. Civ. App. 1989). Nonetheless, our reading of those cases suggests they are consistent with Arkansas law and do not support the argument SAPCO advances in this appeal. For example, citing the *Monroe* case, the Georgia Court of Appeals stated that it has long been the rule in Georgia that committal of a defendant by a magistrate is prima facie, *although not conclusive*, evidence of probable cause for such prosecution. *Garmon v. Warehouse Groceries Food Center, Inc.*, 427 S.E.2d 308 (Ga. App. 1993). The *Garmon* court further held that this type of prima facie establishment of probable cause "may be overcome by the accused, as plaintiff in the subsequent action for malicious prosecution, through producing evidence that, if believed, would show want of probable cause."

[3] AMI Civil 4th (1999) describes malice as having "acted out of hatred, ill will, or a spirit of revenge."

[4] In oral argument, SAPCO seemed to deny Jim Johnson's testimony, but his testimony is clearly set out at pages 454 and 455 of the transcript.

having anything to do with SAPCO's loss. Moreover, while SAPCO claims more than $7,800.00 was stolen, it never clearly showed that amount of money was illicitly taken or that the over-rings were anything more than mistakes.

██ ██ We conclude on this point by stating the settled rule that malice may be inferred from a lack of probable cause. *See Cordes v. Outdoor Living Center, Inc.,* 301 Ark. 26, 781 S.W.2d 31 (1989). Probable cause, as noted above, is determined by the facts and circumstances surrounding the commencement and continuation of the legal action. *Id.* Here, malice may be inferred from the lack of probable cause, for the reasons already discussed, but especially because Clint Johnson was shown to have deliberately failed to inform the police that Schiesser was out of the country and state on several occasions when money was "stolen." Also, as just discussed, Jim Johnson made it clear that his purpose was to get the money repaid, even though he had no proof that Schiesser had stolen it. In addition, Linda Kay Reed, another SAPCO employee, testified that she was unaware of any policy that a manager was responsible for the repayment of missing funds. Finally, Schiesser herself testified that while on her cruise in the Bahamas, she made an unflattering comment about Clint Johnson; that comment somehow made its way back to Johnson, and he treated her differently after she returned from the cruise. From these facts, as presented to the jury, there was sufficient evidence regarding the lack of probable cause and Johnson's improper motive for instituting the suit from which the jury could conclude that SAPCO acted maliciously.

██ ██ SAPCO's last point for reversal is that Schiesser's evidence was insufficient to support the jury's finding of abuse of process. Again, we disagree. In order to prevail on an abuse of process claim, a plaintiff must show the following: (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *Routh Wrecker Serv., Inc. v. Washington,* 335 Ark. 232, 980 S.W.2d 240 (1998). This court has stated that the test of abuse of process is whether a judicial process is used to extort or coerce. *Id.,* 335 Ark. at 238. The key to the tort is the improper use of process after its issuance in order to accomplish a

purpose for which the process was not designed. *Id*; *see also Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995). Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. *Id.*

In *Routh Wrecker Serv., Inc. v. Washington, supra*,, this court held that there was sufficient evidence to support a jury's finding of abuse of process when the defendant, Routh Wrecker, had Washington arrested, apparently for theft, when Washington stopped payment on a check he had written for a car being sold at auction by Routh. Washington had stopped payment because when he went to pick up the car, its battery, spare tires, and some tools were missing. Despite the fact that Washington never took the car from Routh's lot, Routh swore out an affidavit that Washington had not returned the car to the lot. In addition, when Washington's father contacted Ronald Routh about the charges, Routh replied that "all he wanted was his money and that he would drop the charges if he was paid." *Routh Wrecker*, 335 Ark. at 236. At trial, Routh testified that even though he knew the car was on the lot, he still did not ask to drop the charges. *Id.* at 239.

In affirming the trial court's judgment in Washington's favor, this court stated that "we note[ ] a potential abuse of process in the defendant's failure to do anything to prevent the issuance of the arrest warrant or the trial itself. We further observe] [ that the use of criminal prosecution to extort payment of money or recovery of property is a classic example of the tort of abuse of process." *Routh Wrecker*, 335 Ark. at 239 (citing *Harmon, supra*). This court held that, because Routh allowed the case to proceed for the coercive purpose of collecting Washington's money, there was sufficient evidence to survive Routh's motion for directed verdict on abuse of process. *Id.* at 240.

 The facts of the instant case present a similar situation. As noted above, Clint Johnson testified that his intention was to get his money back. Although Johnson knew that Schiesser could not have stolen the money on several occasions for which she was accused, and although he had no direct proof that she had taken any of the money, he contacted the police department in order to procure an arrest warrant. In ruling on SAPCO's motion for directed verdict, the trial judge found that Johnson "gave testimony before [the magistrate judge] at the probable cause hearing that

Schiesser had taken all this money when, in fact, the documents show that other people completed the reports. He did not reveal that. [Instead] he continued to pursue criminal process at that point in time, for unwarranted and perverted purposes." Viewing this evidence and giving all inferences in the light most favorable to Schiesser, we hold there was substantial evidence from which the jury could conclude that SAPCO used the criminal process, after its issuance, to accomplish an ulterior purpose for which the process was not designed.

■ In affirming the verdict and judgment entered below, we need only address one of the three issues Schiesser raises on cross appeal. That point has to do with SAPCO's failure to produce a fair and accurate abstract. Although a cursory review of the transcript and abstract reveals possible deficiencies, Schiesser makes no attempt to call our attention to the particular deficiencies of which she complains, not does she submit a statement showing the cost of the supplemental abstract or a certificate showing the amount of time devoted to the preparation of the supplemental abstract. Instead, counsel makes a summary request for an attorney's fee based upon ten hours of attorney's time for supplementing SAPCO's abstract. *See* Ark. Sup. Ct. R. 4–2(b)(1) and (2). While the court has discretion under Rule 4–2(b)(2) to consider deficiencies when the appellee fails to call them to our attention, we refuse to do so in these circumstances when the case has been submitted and it would take considerable time on the court's part to determine the exact deficiencies with which Schiesser takes exception. Thus, we deny Schiesser's motion for costs and attorney's fees.

For the reasons above, we affirm.