# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-1276

———————

Thomas Jerry Gibson, Jr.,           *
                                    *
     Plaintiff - Appellant,       *
                                    *   Appeal from the United States
    v.                       *   District Court for the
                                    *   Eastern District of Arkansas.
Regions Financial Corporation;   *
Regions Bank, Inc.,             *
                                    *
     Defendants - Appellees.    *

———————

Submitted: September 22, 2008
Filed: March 2, 2009

———————

Before LOKEN, Chief Judge, WOLLMAN and SMITH, Circuit Judges.

———————

LOKEN, Chief Judge.

Thomas Jerry Gibson, Jr., commenced this action against his former car dealership's secured lender, Regions Bank and its parent company (collectively, "Regions"), asserting a variety of tort claims arising out of the failure of the business. The district court[1] granted summary judgment dismissing all claims. Gibson appeals the dismissal of claims for abuse of process, malicious prosecution, civil conspiracy, and unreasonable search of his home in violation of 42 U.S.C. § 1983. At oral

———————

[1]The HONORABLE J. LEON HOLMES, Chief Judge of the United States District Court for the Eastern District of Arkansas.

argument, Gibson conceded that the malicious prosecution claim was properly dismissed. We conclude the other claims were as well and therefore affirm.

## I. Background

Regions financed the inventory of Gibson's Russellville, Arkansas, dealership, The Car Store, Inc., under a Financing Agreement granting Regions a security interest in the inventory of unsold cars and proceeds from their sales. In late 2003, Gibson advised Regions he had sold sixteen cars "out of trust," meaning that he failed to promptly pay Regions for the financed portion of the sold vehicles, events of default under the Financing Agreement. The parties entered into a Forebearance Agreement in which Regions agreed not to exercise its default remedies while Gibson attempted to sell the business. Regions also required Gibson to turn over title documents to his inventory of yet-unsold vehicles.

The Forebearance Agreement expired on March 1, 2004, with the business unsold and the loan defaults still unpaid. Regions filed a Complaint in Replevin in state court, supported by an affidavit by Branch President Brad Payne describing the sixteen vehicles sold out of trust by make, model, and vehicle identification number (VIN). The court issued a replevin order that day, and Regions repossessed all vehicles on The Car Store's lot. In addition, Regions' outside counsel, Dale Douthit, contacted county prosecutor David Gibbons to suggest an investigation into whether Gibson had committed the felony offense of defrauding a secured creditor. See Ark. Code Ann. § 5-37-203. Shortly thereafter, Payne told Corporal William Glover, an investigator with the Arkansas State Police, that Gibson had sold sixteen cars out of trust and gave Glover a copy of Payne's affidavit in the replevin suit.

One week later, Glover was told by former employees of The Car Store that Gibson regularly put cash and car titles in the briefcase he carried home at night from the business. Glover asked Regions for a list of any title documents that were missing,

speaking with Branch Vice President Blake Tarpley because Payne was on vacation. Tarpley relayed the request to loan officer Jeanna Eddleman, who prepared a list, by VIN number, of one used and four new vehicles whose title documents were not turned over to Regions after Gibson's defaults. The next day, Tarpley and Douthit gave Eddleman's list to Glover. The four new vehicles on this list were among the sixteen vehicles listed on Payne's replevin affidavit as being sold out of trust. Thus, both the bank officers and Glover could have compared the two lists and inferred that title documents for the four new vehicles had been transferred to purchasers.[2]

Without telling anyone at Regions he intended to do so, Glover then applied for and obtained a warrant to search Gibson's home for the missing title documents, relying on the list of five vehicles from Regions and on the information obtained from Gibson's former employees. Gibson's home was searched for the missing titles, which were not found. Nothing was seized in the search, and Glover undertook no further investigation. Some months later, prosecuting attorney Gibbons declined to prosecute because "the issues between the parties had been resolved in civil court." By affidavit and deposition testimony, Glover averred that no Regions employee was involved in his decision to obtain a search warrant or in the warrant search. Gibbons submitted an affidavit averring that no Regions employee or agent influenced or attempted to influence his decision whether to prosecute Gibson.

Shortly after the warrant search, Payne, Douthit, and a private process server entered The Car Store's lot to recover collateral a former employee said was locked in a rented storage container. Gibson, still angry over the search of his home, approached, and a heated shouting match ensued. After Gibson left, Payne and the

---

[2]In support of its motion for summary judgment, Regions submitted an affidavit by the purchaser of one car averring that he never received a title document from The Car Store and therefore had trouble registering the car with the State of Arkansas. Eddleman also testified that Gibson had admitted title documents were missing.

others broke the storage container lock but found no collateral. Gibson later filed for bankruptcy protection, owing Regions nearly $400,000.

## II. The Abuse of Process Claim

The tort of abuse of process under Arkansas law consists of three elements: (1) a legal procedure set in motion, whether properly or improperly, that is (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a willful act after the issuance of the process that is not proper in the regular conduct of the proceeding. S. Ark. Petroleum Co. v. Schiesser, 36 S.W.3d 317, 323 (Ark. 2001). "The key to an abuse-of-process claim is improper use of process *after* issuance, even when issuance has been properly obtained." Wal-Mart Stores, Inc. v. Binns, 15 S.W.3d 320, 323 (Ark. 2000) (emphasis in original). Thus, "abuse of process is somewhat in the nature of extortion or coercion." Union Nat'l Bank of Little Rock v. Kutait, 846 S.W.2d 652, 654 (Ark. 1993).

Gibson argues that Regions is liable for abuse of process because it wrongfully caused Glover to obtain and execute the search warrant by giving Glover a list of "missing" vehicle titles without revealing that the vehicles had been sold to customers. There are factual flaws in this theory, including the undisputed fact that Regions gave Glover a copy of Payne's replevin affidavit, which revealed that the four new cars on Eddleman's list had been sold, and the undisputed testimony of Glover that no Regions employee suggested a search warrant or even knew that Glover would apply for a warrant. But the most glaring flaw in this theory is its exclusive focus on the initial issuance of the search warrant. Gibson correctly notes that warrants are a form of judicial process that can be abused. See Schiesser, 36 S.W.3d at 323-24; Routh Wrecker Serv., Inc. v. Washington, 980 S.W.2d 240, 243 (Ark. 1998). But an action for abuse of process requires proof of a willful act after the process issues that perverts its use in order to accomplish an ulterior purpose:

The test of process abuse is not whether the process was originally issued with malice and without probable cause. The remedy in that situation would be an action for malicious prosecution . . . . Here we have no abuse or coercive act subsequent to the issuance of the warrant.

Smith & McAdams, Inc. v. Nelson, 501 S.W.2d 769, 770 (Ark. 1973); accord Cordes v. Outdoor Living Ctr., Inc., 781 S.W.2d 31, 34 (Ark. 1989). It is undisputed that Glover's independent investigation ended with the warrant search, and that Gibbons then made an independent decision not to prosecute. Thus, Gibson presented no evidence of any act by Regions after issuance of the search warrant that could reasonably be found to constitute an abuse or a perverted misuse of that process.

Gibson further argues that Regions abused the replevin order when its agents, "using a private process server, broke into a storage unit without authorization, after a breach of the peace," violating Ark. Code Ann. §§ 18-60-811, -813. This theory was not pleaded in the Amended Complaint or discussed by the district court. Even if properly preserved, it is without merit. The purpose of a replevin order is to recover a creditor's property. This process is not abused when enforced for that purpose, even if the enforcement is flawed. Moreover, the Financing Agreement gave Regions an independent contractual right to enter Gibson's business property to protect its collateral. See also Ark. Code Ann. § 4-9-609; McIlroy Bank & Trust v. Seven Day Builders of Ark., Inc., 613 S.W.2d 837, 841-42 (Ark. Ct. App. 1981).

### III. The Civil Conspiracy and § 1983 Claims

Asserting that investigator Glover served as a Regions "cat's paw," Gibson argues that he presented sufficient evidence to avoid summary judgment on these claims. To recover on a claim of civil conspiracy, plaintiff must show "a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some [lawful] purpose . . . by unlawful, oppressive or immoral means, to the injury of another." Chambers v. Stern, 64 S.W.3d 737, 743 (Ark. 2002) (quotation

omitted). The district court dismissed this claim because Regions, a corporate entity, cannot conspire with its employees, and because Gibson presented no evidence of a conspiracy between Regions employees and Glover. After careful review of the record, we agree. See Dodson v. Allstate Ins. Co., 47 S.W.3d 866, 876 (Ark. 2001) ("a corporate entity cannot conspire with itself").

A private party may be held liable under § 1983 only if it is a "willful participant in joint activity with the State or its agents." Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 941 (1982) (quotation omitted). The district court dismissed Gibson's § 1983 claim because no employee of Regions was involved in Glover's decision to obtain and execute the search warrant, and because the mere furnishing of information to a law enforcement officer, even if the information is false, does not constitute joint activity with state officials. After careful review of the record, we again agree. See Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997) (no § 1983 liability "for merely answering a law enforcement official's questions"); Hassett v. Lemay Bank and Trust Co., 851 F.2d 1127, 1129 (8th Cir. 1988) (no § 1983 liability for "private misuse" of a State's replevin statutes).

For these reasons, we affirm the district court's grant of summary judgment dismissing Gibson's claims on the merits. We decline to consider the court's alternative ruling that Regions Bank would be immune from liability for abuse of process or malicious prosecution because it made "a voluntary disclosure of any possible violation of law or regulation to a government agency." 31 U.S.C. § 5318(g)(3) (a provision of the Annunzio-Wiley Anti-Money Laundering Act).

The judgment of the district court is affirmed.

_____