2011 Ark. 475

**NATIONAL BANK OF ARKANSAS, Appellant**

v.

**RIVER CROSSING PARTNERS, LLC, and Robert Aguiar, Individually and as Trustee of the Robert J. Aguiar Revocable Trust, Appellees.**

No. 10–1337.

Supreme Court of Arkansas.

Nov. 10, 2011.

Stephen L. Gershner and Charles Darwin "Skip" Davidson, Little Rock, for appellant.

James Gerard Schulze, Little Rock, Cade Lee Cox and David W. Sterling, North Little Rock, for appellee.

COURTNEY HUDSON HENRY, Justice.

Appellant National Bank of Arkansas (NBA) appeals the circuit court's decision to submit certain claims to the jury and the circuit court's denial of its motion for directed verdict, motion for judgment notwithstanding the verdict (JNOV), motion for new trial, and motion for mistrial. For reversal, NBA argues that the circuit court erred in submitting NBA's foreclosure and fraudulent-transfer claims to the jury. NBA further asserts that substantial evidence did not support the jury's verdict on two separate grounds. On cross-appeal, appellee Robert Aguiar argues that the circuit court erred in granting a verdict for NBA on his claim for abuse of process. We have jurisdiction of this appeal pursuant to Arkansas Supreme Court Rule 1–2(b)(5) (2011), as the appeal presents an issue needing development and clarification. We reverse and remand on the direct appeal and affirm on the cross-appeal.

## I. *Facts*

On May 2, 2005, River Crossing Partners, LLC and its members, Robert Aguiar (Robert), Clinton Aguiar (Clinton), and Gary Washam (Washam) (collectively referred to as RCP), borrowed $2.5 million from NBA to purchase and develop a nineteen-acre residential subdivision in Maumelle. The RCP parties signed the note, which was secured by a mortgage of the subdivision property, a mortgage of Robert's real property in Little Rock (the Brodie Creek house), a mortgage of Robert's real property in Hot Springs Village (the Buque house), and a consumer security agreement and assignment granting a lien on Robert's securities account that contained three $100,000 bonds. The consumer security agreement and the assignment stated that they secured the current and future obligations of the RCP parties. One year later, the loan matured. On October 30, 2007, RCP renewed the loan in the amount of $1,354,323 (Note 1). Robert borrowed $88,000 from NBA to pay the interest on Note 1 (Note 2). Subsequently, NBA made a construction loan to HomeBuilderOne, Inc. and Clinton, and that loan (Note 3) was secured by a mortgage on the subdivision property. NBA also made two construction loans (Note 4 and Note 5) to Washam Construction Company and Gary Washam.

After January 2007, none of the subdivision lots sold. By June 2008, all of the loans went into default. In August 2008, Robert created the Robert J. Aguiar Revocable Trust. According to NBA, Robert

transferred a significant amount of property to the trust, including Robert's Brodie Creek and Buque houses. On September 4, 2008, NBA filed its complaint against RCP, seeking personal judgment on the promissory notes, foreclosure of its mortgages, and enforcement of the security agreement. In its third amended complaint, NBA added a fraudulent-conveyance claim against Robert and the trust, alleging that Robert had fraudulently transferred the Brodie Creek and Buque homes to the trust. NBA requested that the circuit court void those transfers as fraudulent and impose a lien on the properties.

In response, RCP did not dispute that NBA was entitled to foreclose on the mortgaged real property. It claimed that NBA was not entitled to enforce the security agreement against the three bonds in Robert's securities account. Robert denied transferring his property to the trust to avoid creditors and asserted that he intended to avoid probate. RCP also disputed the amount of money that it owed at the time of the default. RCP and Robert filed a counterclaim alleging breach of contract; seeking rescission or cancellation of the loan documents; seeking modification or reformation of the loan documents; and alleging conversion, trespass, abuse of process, violations of the Arkansas Deceptive Trade Practices Act, and fraud or misrepresentation. Prior to trial, Clinton and Washam filed for bankruptcy.

On April 21, 2009, NBA filed a motion objecting to RCP's request for a jury trial, which the circuit court denied. The circuit court submitted *inter alia* the following issues to the jury: (1) the amount due from RCP and Robert on Note 1; (2) whether Notes 3, 4, and 5 were secured by Robert's investment account; and (3) whether Robert fraudulently transferred the Brodie Creek and Buque houses to the

trust. The case proceeded to trial, and the circuit court directed a verdict against several of RCP's claims. The court also granted a directed verdict on NBA's right to foreclose on the mortgaged property and denied NBA's motion for directed verdict on the amount of debt owed by RCP. The jury rendered the following verdicts:

a. On Loan No. 1 [Note 1] ..., the jury unanimously found that RCP and [Robert] breached their contract and assessed damages in favor of NBA against RCP and [Robert] in the total amount of $500,000;

...

e. The jury found, by vote of 11 jurors, that under the security agreements, Bond CUSIP # 345370BX7 ... is collateral for Loan No. 1 and Loan No. 2, but is not collateral for Loan No. 3 ..., Loan No. 4 ..., or Loan No. 5 ...;

f. The jury found, by vote of 11 jurors, that under the security agreements, Bond CUSIP # 345402Z87 ... is collateral for Loan No. 1 and Loan No. 2, but is not collateral for Loan No. 3, Loan No. 4, or Loan No. 5;

g. The jury unanimously found that under the security agreements, Bond CUSIP # 3133FOD89 ... is collateral for Loan No. 1 and Loan No. 2, but is not collateral for Loan No. 3, Loan No. 4, or Loan No. 5;

h. The jury unanimously found that Lot 3R, Brodie Creek Community, an addition to the City of Little Rock, was fraudulently transferred from [Robert] to the trust;

i. The jury unanimously found that Lot 4, Block 4, Buque Subdivision, Hot Springs Village, was not fraudulently transferred from [Robert] to the trust[.]

On August 5, 2009, the circuit court entered an order reflecting the jury verdicts and granted foreclosure against the

property securing the debts. The court also ruled that the deed of the Brodie Creek house was void and dismissed NBA's claim to avoid the transfer of the Buque house. The court dismissed all claims against Washam because of his bankruptcy status. NBA then moved for a JNOV, vacation of the order granting a jury trial, treatment of the jury verdict as advisory, new trial, and mistrial. The circuit court denied these motions, and NBA brought its appeal. RCP filed a cross-appeal.

■ Before the court of appeals, NBA argued, among other things, that it primarily sought foreclosure and an equitable lien on the Buque house. NBA contended that the clean-up doctrine remained viable after the adoption of amendment 80 and that those issues should have been decided by the circuit court instead of the jury. In response, RCP asserted that NBA's underlying cause of action was for breach of contract and that the issues were properly tried before a jury. In *National Bank of Arkansas v. River Crossing Partners, LLC*, 2010 Ark. App. 841, 379 S.W.3d 789, the court of appeals reversed and remanded on the direct appeal and affirmed on the cross-appeal, rejecting Robert's argument that the circuit court erred in denying a motion for directed verdict on Robert's claim for abuse of process. RCP filed a petition for review, arguing that the court of appeals' opinion conflicted with prior precedent. We accepted RCP's petition for review. Upon the grant of a petition for review, we consider the case as though it had been originally filed in this court. *Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440 (2008).

## II. *Equitable Claims*

On appeal, NBA raises the following allegations of error: (1) the circuit court erred in submitting its foreclosure and fraudulent-transfer claims to the jury; (2) the circuit court erred in refusing to grant its motions for directed verdict, JNOV, new trial, and mistrial; (3) substantial evidence does not support the jury's verdict that Notes 3, 4, and 5 were not secured by the bonds in Robert's investment account; and (4) substantial evidence does not support the jury's verdict that Robert did not fraudulently transfer the Buque House into the trust. The applicable standard of review is that entitlement to a jury trial is reviewed de novo on appeal. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005).

For the first point on appeal, NBA argues that the circuit court erred in submitting its foreclosure and fraudulent-transfer claims to the jury. Citing *Cruthis, supra,* and *Ludwig v. Bella Casa, LLC*, 2010 Ark. 435, 372 S.W.3d 792, NBA contends that it sought foreclosure against the mortgaged property and an equitable lien on the Buque house, and as a result, the other issues, which are now on appeal, were not triable to the jury. RCP responds that NBA's underlying cause of action included a claim for breach of contract and that the circuit court properly submitted the element of damages to the jury and retained the remaining equitable issues.

■ Prior to amendment 80, a plaintiff filed suit in chancery or circuit court. The clean-up doctrine was used to allow a chancery court to decide law issues because, under that longstanding rule, once a chancery court acquired jurisdiction for one purpose, it could decide all other issues. *Cruthis, supra* (citing *Douthitt v. Douthitt,* 326 Ark. 372, 930 S.W.2d 371 (1996)). The clean-up doctrine provides that, once a court of equity acquires jurisdiction over a case, it may decide all other issues, legal or equitable. *Colclasure v. Kansas City Life Ins. Co.,* 290 Ark. 585, 720 S.W.2d 916 (1986).

Amendment 80 to the Arkansas Constitution abolished chancery courts and vested jurisdiction for actions in equity and law in the circuit courts. *Cruthis, supra.* However, the passage of amendment 80 did not expand a party's right to trial by jury. *Id.* In *Cruthis,* we stated, "Because Amendment 80 left the right to a jury unaltered, the question presented is whether prior to adoption of Amendment 80, Count I [with restitution and equitable lien as the remedies] could be properly submitted to a jury for decision." *Id.* at 535, 203 S.W.3d at 93. In deciding the issues, we examined the historical nature of the claims, placed them in the context of law or equity, and determined whether they would be submitted to the judge or jury. We reversed the circuit court's decision to submit an unjust-enrichment claim to a jury when the plaintiff sought restitution and an equitable lien, which were traditionally heard in equity. In doing so, we stated,

Thus, although unjust enrichment is an equitable cause of action, because it is based on the alleged breach of an implied contract, it may be heard in circuit court and may be heard by a jury. However, we must reverse because restitution was not the only equitable remedy sought in Count I. FNB also sought an equitable lien on certain property. An equitable lien is a right to have a demand satisfied from a particular fund or specific property. An equitable lien has also been defined as a remedy that awards a nonpossessory interest in property to a party who has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled. An action on an equitable lien was historically heard in chancery court because it is an equitable remedy. Because an equitable lien was sought, the circuit court erred in submitting Count I to the jury, and because we

reverse on this basis, we need not address the remaining issues.

*Cruthis,* 360 Ark. at 537, 203 S.W.3d at 94. Because amendment 80 did not alter the jurisdiction of law and equity, we held that the circuit judge, rather than the jury, should have ruled on the claim. *Cruthis, supra.*

Most recently, in *Ludwig, supra,* we revisited our holding in *Cruthis.* Appellant Ludwig owned land near Pinnacle Mountain and constructed a private airstrip on his property for the purpose of flying his personal airplane. The Little Rock Planning and Development Department learned of the airstrip, issued a notice that he was not in compliance with zoning ordinances, and instructed him to remove the construction. Appellant appealed the decision to the Little Rock Board of Zoning Adjustment, which determined that his airstrip was for private recreational use. Appellees filed a complaint, appealing the Board's decision and stated a claim for nuisance. Appellant filed a motion for the trial to be heard before the circuit judge, but the circuit court empaneled a jury. Because the case involved a de novo appeal from a Board of Zoning Adjustment decision, we held that the claim was properly submitted to the jury pursuant to a statutorily created right to a jury trial. *See* Ark.Code Ann. § 14–56–425.

However, in *Ludwig,* we reversed and remanded a portion of the circuit court's decision to send a nuisance claim to the jury and to reserve for itself the question of whether to grant an injunction. Relying on our holding in *Cruthis, supra,* we stated,

We have a similar situation in the present case. The circuit judge submitted the issue of whether appellant's airstrip was a nuisance to the jury, but

reserved the issue of remedy for the court. Traditionally, the determination of whether something constitutes a private nuisance and whether to grant equitable relief was for a chancellor to decide in a court of equity. Relying on our holding in *Cruthis,* we reverse the circuit court's decision to submit the private nuisance claim to a jury. As a claim that would normally lie in equity, the circuit court erred in submitting the nuisance issue to the jury.

*Ludwig,* 2010 Ark. 435, at 9, 372 S.W.3d 792, 798.

Turning to the present case, the circuit court submitted the foreclosure and fraudulent-transfer claims to the jury. Specifically, the circuit court submitted the following issues: (1) the amount due on the promissory note secured by mortgages and the security agreement; (2) whether bonds secured the notes and mortgages; and (3) whether Robert fraudulently transferred real property. In our review of the circuit court's decision to submit these claims to the jury, we follow our analysis in *Cruthis, supra,* by reviewing the historical nature of these claims to determine whether they were traditionally submitted as equitable or legal proceedings.

■ First, we examine the note in the foreclosure claim. We have stated that a foreclosure proceeding is an equitable proceeding. *Riggin v. Dierdorff,* 302 Ark. 517, 790 S.W.2d 897 (1990). The constitutional right to a jury trial does not extend to a foreclosure proceeding. *Id.* Similarly, in *Colclasure, supra,* we stated,

The appellants' first point of appeal is that this is a suit on a debt and the chancellor erred in denying them a jury trial. They contend that there is a distinction between a decree for a money judgment and a decree of foreclosure, and since the decree in this case grants a money judgment they were entitled to

a jury trial. They cite cases from other jurisdictions which, they contend, entitle them to a jury trial.

In the cases cited by appellants there is a statute or rule of civil procedure which alters the common law and grants a right of jury trial when a money judgment is sought in a mortgage foreclosure proceeding. We do not have such a statute or rule but, instead, continue to follow the common law that a mortgage foreclosure proceeding is an equitable proceeding.

*Colclasure,* 290 Ark. at 587, 720 S.W.2d at 917 (1986) (citations omitted). *See Amtrust Inc. v. Larson,* 388 F.3d 594 (8th Cir.2004) (noting that there was no entitlement to a jury trial as a matter of right in the mortgage foreclosure case). Based on this precedent, we traditionally have viewed the amount of the note as part and parcel of the foreclosure action. Thus, we conclude that the loan amount, which was secured by a mortgage in the present foreclosure action, was essential to the foreclosure proceeding itself. As a result, we hold that the circuit court erred in submitting this traditionally equitable claim to the jury.

■ Next, the jury heard the issue of whether the notes were secured by the three $100,000 par-value bonds as a part of Robert's securities account. This issue involving the security agreement goes to the foreclosure claim, which is traditionally heard in equity before a chancellor instead of a jury. *Colclasure, supra.* Not only is foreclosure an equitable remedy, but an action on an equitable lien was historically heard in chancery court because it is an equitable remedy. *Cruthis, supra* (citing *Dews v. Halliburton Indus. Inc.,* 288 Ark. 532, 708 S.W.2d 67 (1986)). Therefore, we hold that this claim also should have been submitted to the judge.

■ Lastly, the jury heard the fraudulent-transfer claims. Fraudulent-transfer claims resound in equity and typically were held before a chancellor. *See Clark v. Bank of Bentonville*, 308 Ark. 241, 824 S.W.2d 358 (1992) (affirming a Benton County Chancery Court's imposition of a lien on real estate when the transfer was fraudulent). Based on this precedent, we recognize that the fraudulent-transfer claim is equitable in nature, and as a result, we hold that the circuit court erred in submitting this claim to the jury.

We conclude that all of these claims historically have been submitted to a judge in equitable proceedings. In cases like the one before us, a circuit court must review the historical nature of the claims to determine whether they should be submitted to a judge as equitable matters or to a jury as legal matters. *See Cruthis, supra.* To that end, these equitable claims should have been tried before the circuit court instead of the jury. Therefore, we hold that the circuit court erred in denying NBA's motion objecting to RCP's request for a jury trial and by submitting these claims to the jury. Accordingly, we reverse and remand on this point, and we decline to reach the remaining arguments on the direct appeal.

### III. *Cross-appeal*

■ On cross-appeal, Robert argues that the circuit court erred in granting a motion for directed verdict in NBA's favor on his claim for abuse of process. Specifically, Robert contends that substantial evidence supported each element of the claim. Robert asserts that "NBA intentionally perverted the legal process to accomplish an ulterior purpose for which it was not designed" by filing a lis pendens on property that was not pledged as collateral. In his brief, Robert argues that NBA sought to "hamstring [his] flexibility in managing his financial affairs long before the judgment, with the purpose of restricting his ability to defend himself and forcing him to capitulate."

■ Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *The Medical Assurance Co. v. Castro*, 2009 Ark. 93, 302 S.W.3d 592. We will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. *Id.* Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008). It is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict. *Id.* In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that fairminded people might reach a different conclusion. *McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007).

■ In proving an abuse-of-process claim, Robert needed to establish the following elements: (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *South Ark. Petroleum Co. v. Schiesser*, 343 Ark. 492, 36 S.W.3d 317 (2001). The test of abuse of process is whether a judicial process is used to extort or coerce. *Routh*

*Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998). The key to the tort is the improper use of process after its issuance to accomplish a purpose for which the process was not designed. *Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995). Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. *Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003). Abuse of process is a narrow tort. *Union Nat'l Bank of Little Rock v. Kutait*, 312 Ark. 14, 846 S.W.2d 652 (1993).

Viewing the evidence in the light most favorable to Robert, we cannot say that the circuit court erred in granting a directed verdict on the abuse-of-process claim. Here, Robert points to his self-serving testimony that his bonds lost value because of the economy and that he was not able to reinvest the bonds because they were frozen. He testified that Jackson Ballentine, NBA's special-assets officer, told him, "We're going to get everything you own." However, Robert failed to establish the elements of abuse-of-process because he did not establish an ulterior purpose or an improper act on the part of NBA. Considering that abuse of process is a narrow tort, we hold that the circuit court properly granted NBA's motion for directed verdict. Accordingly, we affirm the circuit court's ruling on the cross-appeal.

Reverse and remand on direct appeal; affirm on cross-appeal.