Cite as 2023 Ark. App. 73

# ARKANSAS COURT OF APPEALS
## DIVISIONS I & IV
### No. CV-21-627

| | |
|---|---|
| TINA LEWIS<br><br>APPELLANT<br><br>V.<br><br>BAPTIST HEALTH D/B/A/BAPTIST HEALTH MEDICAL CENTER LITTLE ROCK; AND PEGGY K. GUARD, M.D.<br>APPELLEES | Opinion Delivered February 15, 2023<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-18-7166]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Tina Lewis appeals the September 3, 2021 order of the Pulaski County Circuit Court denying her request to extend time to respond to summary-judgment motions filed by separate appellants Peggy K. Guard, M.D., and Baptist Health d/b/a Baptist Health Medical Center Little Rock (Baptist). Lewis contends on appeal that the circuit court abused its discretion in denying the requested extension because Lewis's new counsel had been unable to procure her previous counsel's "complete file" and had other professional obligations. While the appealed-from order also granted Dr. Guard's and Baptist's summary-judgment motions, the merits of those motions are not on appeal.

The surgery at issue in this medical-malpractice case occurred on October 24, 2014. Lewis, represented by the Law Office of Kathryn L. Hudson, initially filed suit on October

13, 2015, against a number of defendants but took a voluntary nonsuit on January 2, 2018. Lewis filed the present suit against those same defendants on October 15, 2018; however, no defendant other than Dr. Guard or Baptist is party to this appeal. Extensive discovery was conducted during this case. Appellees filed for summary judgment in March 2020, arguing that Lewis could not meet her burden of proof under the Arkansas Medical Malpractice Act. Lewis responded that there were material facts in dispute, and the motions should be denied as premature and moot. The circuit court denied the motions. On June 22, 2021, Dr. Guard and Baptist filed for summary judgment again, arguing once more that Lewis's claim should be dismissed because she could not meet her burden of proof. Lewis's responses were due on or before July 13. Due to Hudson's pretrial commitments in another case, Lewis asked Dr. Guard and Baptist to have until July 20 to respond to their motions, and they agreed. On July 12, Hudson was diagnosed with COVID-19, and on July 13, Lewis filed a formal motion for extension of time, requesting until July 28 to respond to the summary-judgment motions. The request was unopposed. The circuit court granted the request, and Lewis's responses were due by July 28. On August 10, Hudson died.

A pretrial hearing had been scheduled for August 16. On that day, attorney Willard Proctor, Jr., entered his appearance on behalf of Lewis. At the hearing, the circuit court made clear that discovery was closed and had been closed prior to Hudson's death; no extensions would be granted in that regard; no further experts could be identified, retained, or deposed; no additional testimony would be taken from anyone, including Lewis's experts; and there would be no new opinions or "tweaking" of existing opinions. But the circuit court agreed

2

that the circumstances were such that additional time should be permitted for Proctor to conduct his due diligence in order to determine if he wished to formally take the case and, if so, to file responses to the motions for summary judgment. The circuit court then ordered that by noon on September 3, Proctor was to either inform the circuit court that he was not proceeding with the representation or file responses.

On September 3, Lewis filed another motion to extend time requesting until September 15 to respond to the motions, setting out that additional time was needed because Proctor had been unable to procure Hudson's "complete file" and had other preexisting trial obligations. That same day, the circuit court entered an order denying the requested extension and granting appellees' respective summary-judgment motions. In doing so, the circuit court found that the case was a refiling of a 2016 case;[1] the response time had already been enlarged; the experts were disclosed during discovery; and discovery was closed prior to the filing of the summary-judgment motions. The circuit court made two additional findings. First, each of Lewis's experts relied on a "national standard" in formulating their respective opinions in violation of well-established Arkansas precedent. Second, on the record as it stood and would continue to stand, the only expert opining on causation testified that Lewis's injuries were caused because she was kept in a particular position for more than six hours, but the undisputed evidence was that Lewis was in that position for only three and a half hours. The order made clear that the most recent extension had been given so Proctor

---

[1]The order erroneously states that this "matter is a refilling of a 2016 case." The case was initially filed in 2015.

could confer with the causation expert regarding her opinion and review the depositions and notes. The circuit court then denied the motion to extend time and granted the summary-judgment motions, concluding that prior to the close of discovery, Lewis had failed to produce a qualified medical witness to opine as to causation. The order then dismissed the matter with prejudice as to all remaining parties in the case. This timely appeal followed.

Precedent is clear that the grant or denial of an extension request is reviewed for an abuse of discretion. *Dollar Gen. Corp. v. Elder*, 2020 Ark. 208, at 12, 600 S.W.3d 597, 605. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* An appellant must show prejudice from the denial of an extension and has the burden of doing so; when a motion is based on a lack of time to prepare, we will consider the totality of the circumstances. *Id.* While the passage of time is not determinative, the supreme court has explained that it is a factor to be considered. *Jenkins v. Int'l Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994).

Lewis argues that the circuit court abused its discretion because the causation expert may not have reviewed documents that Hudson may have had in her possession but failed to provide that expert before the expert authored the report or was deposed. However, at the August 16 hearing, the circuit court was clear that discovery was "locked" and had been long before Hudson fell ill.[2] The circuit court specifically stated:

But here's the problem with the case—and discovery is closed.

_____

[2]No request was ever made to reopen discovery.

4

. . . .

> So I really think that the only thing that needs to be done at this point in time, Mr. Proctor, and I'm not crossing my side of the bench, but those three expert depositions, and of course Nurse Goodwin says that he's not doing causation anyway. So the other two, the two doctors, if someone on the plaintiff's side wants to scour those things, and then scour the anesthesiologist's notes about what happened during the surgery, and see if I missed something, then that might be productive. Other than that, it's clear that the defendants are entitled to summary judgment.

Lewis has identified no additional document that Hudson did, in fact, possess and that the expert did not review that could have defeated summary judgment. *See, e.g., Alexander v. E. Tank Servs., Inc.*, 2016 Ark. App. 185, at 8, 486 S.W.3d 813, 817 (holding that appellant whose third request for extension of time to respond to a motion for summary judgment was not prejudiced when he was only able to argue on appeal that there *may* have been more evidence to defeat the motion, not that there *was*).

Lewis further argues that the circuit court abused its discretion by denying the extension because Proctor was forced to operate without the benefit of Hudson's insights, thoughts, notes, or other privileged documents that contained strategies, points, and arguments to respond to the summary-judgment motions. However, discovery had been closed for some time; Lewis had received a large portion of the "file"; and Lewis has failed to identify what, exactly, is still missing from the "file."[3] While Hudson's insights, thoughts, or notes could be helpful to Proctor, there is no evidence in the record that Proctor was

---

[3]The record is not clear what, exactly, constitutes "the file."

5

incapable of formulating a response to a motion for summary judgment in a medical-malpractice case on the basis of what he did possess.

Lewis also argues that the circuit court abused its discretion because Proctor was obligated in other cases. However, Proctor's other obligations—which included a previously set jury trial—were not mentioned at all to the circuit court when discussing how much time would be needed to conduct a due-diligence review of the file, speak to the expert, and inform the circuit court either that he would not be proceeding with the representation or file responses to the summary-judgment motions.

The following exchange occurred between the circuit court and Proctor:

| THE COURT: | So let's talk about a time frame, Mr. Proctor. |
| --- | --- |
| MR. PROCTOR: | I would need at least two weeks to be able to get with—and I think—that is what I was looking at, maybe if somewhere around the third of September-ish or so I could have the response in. That's a little over— |
| THE COURT: | Today is the 16th. So by noon on Friday, September 3, a little more than three weeks. Just shy of a month. A response or—and I haven't looked at—I know you said you entered your entry of appearance this morning, Mr. Proctor, but you did that as a prophylactic measure so that you would be able to argue for the plaintiff in court, and I appreciate that. So by noon on Friday the 3rd, either a responsive pleading, or if you'll just let the court know if you're not going to proceed with representing the plaintiff professionally now that you've had a chance to look at the file and talk to the set of experts that you didn't choose. Does that sound fair? |
| MR. PROCTOR: | Yes, Your Honor. |

Proctor was asked about the time frame and responded that he would need a minimum of two weeks, with perhaps a deadline of somewhere around September 3, which was precisely the time awarded.

Lewis then argues that the requested extension was not unreasonable, insomuch as Proctor had been only recently retained; he had to appear at a hearing six days after the death of Hudson; and ultimately, Lewis was being asked to respond to summary-judgment motions with new counsel, with an incomplete "file," in eighteen days. But, again, the circuit court asked Proctor how much time he would need to do his due diligence, he responded, and he was given the amount of time requested. There is no indication that a greater amount of time could not have been requested at the hearing or that a greater amount of time would not have been given. The record is clear that the extension was granted solely so that Proctor could do a due-diligence review of the file and then determine if he wished to proceed with the representation. As part of that review, he was to speak with the expert, which occurred; and review the file, which occurred; and then either withdraw or file a response in opposition to the motions, neither of which occurred.

Finally, there is no prejudice here. The circuit court made clear at the hearing that after its "scouring" of the record, the only expert testimony on causation appeared to be incorrect and that Lewis's own experts' testimonies fell short of what was required under the Arkansas Medical Malpractice Act. Lewis has provided no information or argument on appeal that the communications with the causation expert that did occur could potentially

change the outcome of this matter, and Lewis did not appeal the grant of summary judgment but only the denial of the motion to extend time.

Certainly, we are sympathetic to the circumstances of this case, and we are also aware that this may appear to be a harsh result. However, the standard of review for this court on appeal is not whether the denial of an extension of time was unreasonable or the result harsh. The totality of the circumstances demonstrates that no prejudice resulted. The record reflects that the circuit court did not act improvidently, thoughtlessly, or without due consideration. We hold that the circuit court did not abuse its discretion in denying the motion to extend time.

Affirmed.

ABRAMSON, GLADWIN, WOOD, and BROWN, JJ., agree.

HIXSON, J., dissents.

**KENNETH S. HIXSON, Judge, dissenting**. Somehow over the years we have conflated a circuit court's *use* of discretion with its *abuse* of discretion. We have elevated a circuit court's *use of* discretion to such an exalted pedestal that it has become virtually unreviewable. Abuse of discretion is nebulous, vague, imprecise, and perhaps even somewhat mystical. Maybe it is intended to be that way. Attempting to describe an abuse of discretion is not unlike Justice Potter Stewart's attempt to describe pornography or obscenity when he wrote, "I know it when I see it[.]"[1] We have written and read the standard "thoughtless,

---

[1]*Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (concurring opinion).

improvident, and without due consideration" ad nauseum with such monotonous and rote regularity that we have conflated and reduced "thoughtless" to *no* thought at all and "without due consideration" to without *any* consideration at all. And the word "improvident"? Who really knows what that means in this standard of review? The *Merriam-Webster* online dictionary defines "improvident" as "not foreseeing and providing for the future." *Improvident*, Merriam-Webster.com/dictionary/improvident (last visited February 13, 2023). Perhaps "improvident" just got swept up in the need for a third word to satisfy the Rule of Threes that we were taught in law school to help readers process the information more effectively. The Eighth Circuit Court of Appeals took a shot at attempting to describe an abuse of discretion when it stated that an abuse of discretion occurs "when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1994). In my opinion, that is what occurred here; in weighing the proper factors, the circuit court committed a clear error of judgment.

This medical-malpractice litigation had been going on for seven years. *The plaintiff's attorney unexpectedly died from COVID-19.* A few days after her death, the new attorney electronically entered his appearance on the morning of the pretrial hearing but candidly advised the court that he had been unable to obtain a copy of the deceased attorney's files. Recognizing the new attorney's quandary, the circuit court stated that if the new attorney decided to take on the case, the new attorney owed his client a duty of due diligence. The new attorney was faced with the Herculean task of getting up to speed in a seven-year case and responding to

two sizeable and extensive motions for summary judgment—one from the doctor and one from the hospital. The motion for summary judgment filed by the doctor was 767 pages in length. At the conclusion of the hearing, the circuit court gave the attorney eighteen days to decide if he really wanted to accept representation of the case and, if he did, to file responses to the two motions for summary judgment.

During that eighteen-day period, the new attorney repeatedly contacted the deceased attorney's office to obtain the voluminous file. He also made trips to the office in an attempt to get the file. He was unsuccessful. The new attorney contacted the expert witness for a copy of the file and was told she did not have a complete copy. The new attorney even took the extraordinary step of contacting the hospital's attorneys and requested nonprivileged portions of the file. All the while, the clock was ticking. To their credit, the hospital's attorneys graciously provided a copy of the materials that they determined were not privileged. However, the opposition's materials were received just three days before the deadline to respond to the summary-judgment motions, and these materials certainly did not contain the deceased attorney's seven-year work product and mental impressions necessary to respond to these sizeable motions for summary judgment. Although the new attorney did eventually receive large portions of the opposition's file, he never received any portion the deceased attorney's file. The new attorney's practice was not in a vacuum. He was involved in a multiday criminal jury trial, which had been unexpectedly pushed back a day. Faced with all these adverse circumstances, the new attorney merely requested a *twelve-day* extension to respond to the motions for summary judgment. Within six hours and

10

without opposition or comment, the circuit court denied the extension. Summary judgment was granted and the case dismissed. After seven years of fierce litigation over substantial personal injuries allegedly sustained as a result of medical malpractice, the plaintiff's case was summarily tossed to the curb. *Another victim of COVID-19.* The majority of this court is of the opinion that the circuit court did not abuse its discretion. I disagree, and therefore I dissent.[2]

This dissent has nothing to do with the merits of the hospital's motion for summary judgment except to say that it is not particularly difficult to win a one-sided, unopposed motion for summary judgment. Further, my disagreement has nothing to do with the previous attorney's requests for extensions made prior to her unfortunate death from COVID-19. If the circuit court had sanctioned the previous attorney prior to her untimely death, perhaps it would have been justified. But it did not. My narrow disagreement is with the circuit court's denying the new attorney's request for a *twelve-day extension* based on the circumstances herein—a *twelve-day extension* after the untimely death of the previous attorney

---

[2]I recognize that the majority also concludes that there is no prejudice. However, the cases cited by the majority are cases decided under Arkansas Rule of Civil Procedure 56(f), where a party was requesting a continuance to obtain additional discovery. Here, appellant's counsel was not requesting a continuance for additional discovery but was instead asking only for an extension of twelve days to respond, which is governed by Rule 56(c). Rule 56(c) provides that "for good cause shown" the circuit court has discretion to enlarge the time to respond to the summary-judgment motion, and in my view appellant's counsel clearly showed "good cause" as contemplated by the rule. Moreover, even assuming arguendo that appellant was required to show prejudice under these circumstances, appellant never obtained the deceased attorney's files, so prejudice would have been difficult—if not impossible—to demonstrate.

and the newly acquired attorney's being unsuccessful in obtaining the deceased attorney's file. He did not ask to reopen discovery. He did not ask for new evidence to be presented. He only asked for twelve additional days. The matter had been going on for seven years. He only asked for twelve additional days. The circuit court had the discretion to grant the twelve-day extension. The circuit court did not even wait for a response from the hospital or doctor. The circuit court apparently thought about it and considered it within a six-hour window and then denied the motion and prepared and filed an order granting summary judgment. In my view, the circuit court's decision was thoughtless, improvident, and without due consideration and was a clear error of judgment. It is not the court that loses. It is not the attorney that loses. It is Tina Lewis, a real person, that loses. I would reverse.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *David P. Glover, Gary D. Marts, Jr.*, and *Laura E. Bates*, for separate appellee Baptist Health Medical Center.

*Friday, Eldredge & Clark, LLP*, by: *Bradley S. Runyon, Joshua C. Ashley*, and *Jordan Broyles*, for separate appellee Peggy Guard, M.D.