*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INFINITY PHYSICAL THERAPY, LLC,

        Plaintiff-Appellant/Cross-Appellee,

v

MEEMIC INSURANCE COMPANY,

        Defendant-Appellee/Cross-Appellant.

FOR PUBLICATION
January 30, 2025
10:07 AM

No. 365767
Wayne Circuit Court
LC No. 21-002406-NF

Before: FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

SWARTZLE, J.

Under the Public Health Code, our Legislature has authorized licensed chiropractors to make certain diagnoses. Specifically, a chiropractor can evaluate a patient and make a diagnosis of a condition or disorder "of the human musculoskeletal and nervous systems as they relate to subluxations, misalignments, and joint dysfunctions." MCL 333.16401(1)(e)(*i*). Within this authorization to evaluate and diagnose a patient for certain physical maladies, a chiropractor can develop an opinion of the underlying cause of the problem. So long as a proper foundation is laid, and the testimony is limited in scope as required under the Public Health Code, there is no absolute legal bar to a chiropractor providing expert testimony on causation for purposes of a motor-vehicle collision. Because the trial court erred in prohibiting such testimony, we vacate the trial court's grant of summary disposition to defendant and remand for further proceedings.

## I. BACKGROUND

After Fatima Alhussein was involved in a motor-vehicle collision in March 2019, Dr. Riad Khoury recommended that she complete physical therapy. Alhussein began treatment with one physical therapist and then transferred to see a new one, Ahmed Zaki, due to the location. She also received chiropractic treatment from Khaled Zaki. In November 2019, Alhussein was involved in another motor-vehicle collision and continued physical therapy. Alhussein assigned her rights to no-fault benefits to plaintiff, which was owned by Ahmed.

Plaintiff sued defendant to recover no-fault benefits for the physical-therapy treatment related to Alhussein's March 2019 accident. Defendant filed motions in limine to limit Ahmed's and Khaled's testimonies regarding causation and whether treatment was reasonable and

necessary. At a hearing on the motion, plaintiff argued that a chiropractor, as a licensed medical professional, could testify about causation. Defense counsel responded that plaintiff needed to establish that the physical therapy was necessary, which Khaled's testimony could not establish because a chiropractor could not "bridge that gap." Plaintiff's attorney acknowledged that there were no claims for chiropractic bills and that Khaled did not "have the foundation to say, well, look, physical therapy was appropriate in this case."

The trial court determined that Ahmed could testify about the physical-therapy services he provided and the reasons for providing the treatment, but he could not testify about causation. The trial court also granted defendant's motion as to Khaled, specifically determining that Khaled could not offer expert testimony about (1) causation; (2) medical diagnoses made by a medical doctor; (3) "the origin of any medical problem" that Alhussein was claiming; (4) "the relationship of any medical treatment, outside of chiropractic care, to the accident"; or (5) the necessity of physical therapy in this case.

Defendant subsequently moved for summary disposition under MCR 2.116(C)(10), contending that, without Ahmed's and Khaled's testimony, there was no genuine issue of material fact regarding causation or whether Alhussein's physical-therapy treatment was reasonable and necessary.

At a hearing on the motion, plaintiff argued that there was no requirement that a medical doctor testify, as in a medical-malpractice case. The trial court acknowledged plaintiff's argument about causation, but explained that plaintiff had to show that the treatment rendered was related to the collision and objectively reasonable. The trial court further noted that neither Khaled nor Ahmed was "qualified to offer an expert opinion on medical causation or a diagnosis," or prescribe physical therapy. Accordingly, the trial court granted defendant's motion.

Plaintiff now appeals.

II. ANALYSIS

Plaintiff first argues that the trial court abused its discretion by limiting Khaled's testimony regarding causation. This Court reviews for an abuse of discretion a trial court's decision on a motion in limine. *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013). A trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes. *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017). This Court also reviews de novo the interpretation and application of statutes and court rules. *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018).

Generally, an insured may receive benefits for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).[1] Under MCL 500.3105(1), "an insurer is liable to pay benefits for accidental bodily injury arising out of the

---

[1] The language of MCL 500.3107(1)(a) was slightly amended in June 2019, following Alhussein's first collision, but did not alter the impact of the statute as it relates to this appeal.

-2-

ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." The "insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident" and if those injuries are caused by the use of a motor vehicle. *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). To recover benefits, "the causal connection between the injury and the use of a motor vehicle as a motor vehicle [must be] more than incidental, fortuitous, or 'but for.'" *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986).

The trial court has an obligation "to ensure that any expert testimony admitted at trial is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). The party offering the expert testimony has the burden of establishing its admissibility. *Id*. at 781. "Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation." *Id*. at 782. At the time of the trial court's order, MRE 702[2] provided:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under MCL 600.2955(1), "a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact."

A chiropractor is generally qualified to testify about matters within the scope of his profession and practice. *Corbin v Hittle*, 34 Mich App 631, 636; 192 NW2d 38 (1971).[3] The scope of chiropractic practice is governed by the Public Health Code, MCL 333.1101 *et seq*. Under MCL 333.16401(1)(e)(*i*), the practice of chiropractic includes:

> The diagnosis of human conditions and disorders of the human musculoskeletal and nervous systems as they relate to subluxations, misalignments, and joint dysfunctions. These diagnoses shall be for the purpose of detecting and correcting those conditions and disorders or offering advice to seek treatment from other health professionals in order to restore and maintain health.

The practice of chiropractic also includes "[t]he evaluation of conditions or symptoms related to subluxations, misalignments, and joint dysfunction through" physical examination; taking and reviewing patient information; and performing, ordering, or using certain tests. MCL

---

[2] Since the time of the trial court's orders, the Michigan Rules of Evidence have been amended. This opinion refers to the rules in effect at the time of the trial court's decisions.

[3] "Cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), but they may be considered as persuasive authority." *Hopkins Twp v State Boundary Commission*, 340 Mich App 669, 692 n 9; 988 NW2d 1 (2022).

333.16401(1)(e)(*ii*).  See *Measel v Auto Club Group Ins Co*, 314 Mich App 320, 330-331; 886 NW2d 193 (2016).

MRE 702 does not limit medical expertise strictly to medical doctors and, under the Public Health Code, the making of a limited diagnosis is within a chiropractor's scope of practice.  See MCL 333.16401(1)(e).  Further, a chiropractor's diagnosis can be used to detect and correct the listed conditions and recommend patients seek treatment from other health professionals.  See *id*.

Other states have addressed the expert testimony of chiropractors.[4]  For example, the Nebraska Supreme Court has stated that "a duly licensed and practicing chiropractor is competent to testify as an expert witness within the scope of his or her knowledge according to his or her qualifications in the field of chiropractics."  *Yagodinski v Sutton*, 309 Neb 179, 190; 959 NW2d 541 (2021) (cleaned up).  In *Dollar General Corp v Elder*, 2020 Ark 208, 215-216; 600 SW3d 597 (2020), the Supreme Court of Arkansas explained that, when a proper foundation was laid, a trial court did not abuse its discretion by permitting a chiropractor to testify about causation.  See also *Hayhoe v Henegar*, 172 SW3d 642, 644 (Tex Civ App, 2005); *Knapp v Wilkins*, 786 So 2d 457, 463 (Ala, 2000).

Here, the trial court abused its discretion with its broad limitation of Khaled's testimony.  Under the Public Health Code, Khaled was permitted to diagnose "conditions and disorders of the human musculoskeletal and nervous systems as they relate to subluxations, misalignments, and joint dysfunctions."  MCL 333.16401(1)(e)(*i*).  "These diagnoses shall be for the purpose of detecting and correcting those conditions and disorders or offering advice to seek treatment from other health professionals in order to restore and maintain health."  *Id*.  The trial court properly determined that Khaled could not offer expert opinion about a diagnosis made by a physician, but it is proper for a chiropractor, with the proper foundation, to testify about a diagnosis within his or her practice as set forth in MCL 333.16401(1)(e)(*i*).  Similarly, a chiropractor, with the proper evaluation of a patient, may testify about the cause of that condition or disorder to the extent that such cause can be reliably linked to a condition or disorder within the scope of MCL 333.16401(1)(e)(*i*).

In contrast, the trial court did not err by prohibiting Ahmed from offering expert testimony on causation.  The Public Health Code's provision of practice for a physical therapist specifies that the "[p]ractice of physical therapy *does not* include the identification of underlying medical problems or etiologies, establishment of medical diagnoses, or the prescribing of treatment."  MCL 333.17801(1)(d) (emphasis added).  Accordingly, although plaintiff also argues that the trial court erred by limiting Ahmed's testimony, the trial court properly limited his testimony to the services he provided and the reasons why he provided the treatment.

The trial court's grant of summary disposition appears to have been based, in large part, on its erroneous rationale for excluding Khaled's testimony.  Therefore, its determination that plaintiff had not demonstrated a genuine issue of material fact about causation or the reasonableness of the

---

[4] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value."  *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 727 n 5; 957 NW2d 858 (2020).

physical therapy services was premature, and we need not address those issues on appeal. On remand, the trial court may still conclude that Khaled's testimony does not meet the standard of MRE 702, but it may not do so for the sole reason that he would be offering testimony on causation as a chiropractor.

We reverse the trial court's grant of the motion in limine with respect to the chiropractor and affirm with respect to the physical therapist; vacate the grant of summary disposition; and remand for further proceedings consistent with this opinion.

We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney
/s/ Thomas C. Cameron